# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALL-STATE FIRE PROTECTION, INC. | ) | Case No. 17-15844 TBM |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |
| RAYMOND S. GIBLER, | ) | Case No. 18-10543 TBM |
| SSN: XXX-XX-2659, | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | **JOINTLY ADMINISTERED UNDER** |
| | ) | **CASE NO. 17-15844 TBM** |

---

## THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED APRIL 25, 2019

---

All-State Fire Protection, Inc. ("All-State"), and Raymond S. Gibler ("Mr. Gibler"), through their respective counsel, submit their Third Amended Joint Chapter 11 Plan of Reorganization dated April 25, 2019, and state as follows:

## ARTICLE I
## SUMMARY

This Third Amended Joint Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay the creditors of All-State and Mr. Gibler (collectively the "Debtors") from net income of the Debtors.

This Plan provides for ten (10) classes of secured claims and four (4) classes of unsecured claims. General non-insider and unsubordinated unsecured creditors holding allowed claims will receive pro-rata distributions over a period of six (6) years from two creditor funds: one for All-State creditors and a second for Mr. Gibler's creditors. This Plan also provides for payment of administrative and priority tax claims which are not classified.

All creditors and equity security holders should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers**

-1-

**carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

A.      *Classes of Creditors in All-state's Bankruptcy Case.*

| | | |
|---|---|---|
| 2.1 | Class 1 | Consists of the secured claim of Wells Fargo Bank, N.A. against All-State to the extent allowed as a secured claim under 11 U.S.C. § 506 which attaches to the assets of All-State, in the principal amount of $1,203,900.00. |
| 2.2. | Class 2 | Consists of the secured claim of Wells Fargo Equipment Finance, Inc. to the extent allowed as a secured claim under 11 U.S.C. § 506 which attaches to a 2015 Nissan PF80YLP Forklift (the "WFEF Equipment") in the principal amount of $16,260.18. |
| 2.3 | Class 3 | Consists of the secured claim of Colorado Department of Revenue for unpaid trust fund taxes under C.R.S. §§ 39-22-604(7)(a) and 39-26-117(1)(a), in the principal amount of $349,433.00, or as allowed by the Bankruptcy Court. |
| 2.4 | Class 4 | Consists of the secured claim of Colorado Department of Labor for unpaid unemployment insurance premiums owed by the Debtor under C.R.S. § 8-79-103(1), in the principal amount of $509,268.41, or as allowed by the Bankruptcy Court. |
| 2.5 | Class 5 | Consists of the secured claim of Chrysler Capital to the extent allowed under 11 U.S.C. § 506 which attaches to a 2015 Dodge Ram 1500 Crew Cab pickup, Account No. xxxx5500, VIN xxx5659, in the amount of $34,516.92. |
| 2.6 | Class 6 | Consists of the secured claim of Chrysler Capital to the extent allowed under 11 U.S.C. § 506 which attaches to a 2015 Dodge Ram 1500 Crew Cab pickup, Account No. xxxx5476, VIN xxx5589, in the amount of $34,082.46. |
| 2.7 | Class 7 | Consists of the secured claim of Chrysler Capital to the extent allowed under 11 U.S.C. § 506 which attaches to a 2016 Dodge Ram 1500 pickup, Account No. xxxx5195, VIN xxx4002, in the amount of $42,836.51. |

2.8   <u>Class 8</u>   All unsecured claims against All-State to the extent allowed under 11 U.S.C. § 502.

B.   *Classes of Creditors in Mr. Gibler's Bankruptcy Case.*

2.9   <u>Class 11</u>   Consists of the secured claim of Colorado Business Bank to the extent allowed under 11 U.S.C. § 506 which attaches to real property of Mr. Gibler owns in Morgan County, Colorado known by street and number as 107 and 109 East Central Avenue, Wiggins, Colorado 80654, in the amount of $315,354.91.

2.10   <u>Class 12</u>   Consists of the secured claim of Ditech Financial, LLC, f/k/a Green Tree Servicing, LLC, to the extent allowed under 11 U.S.C. § 506 which attaches to real property of Mr. Gibler owns in Augusta, Kansas, Colorado known by street and number as 1211 SW 110th Street, Augusta, Kansas 67010 in the amount of $126,019.48.

2.11   <u>Class 13</u>   Consists of the claim of Wells Fargo Bank, N.A., arising out of a pre-petition Equity Line with FlexAbility Agreement and Disclosure Statement, to the extent allowed as a secured claim under 11 U.S.C. § 506 which is secured by a deed of trust against real property owned by Mr. Gibler in Jefferson County, Colorado known by street and number as 4065 Zephyr Circle, Arvada Colorado 80004, in the amount of $110,649.45.

2.12   <u>Class 14</u>   All unsecured claims against Mr. Gibler the extent allowed under 11 U.S.C. § 502.

C.   *Classes of Creditors in Connection with Both Bankruptcy Cases.*

2.13   <u>Class 21</u>   All insider unsecured claims against the Debtors to the extent allowed under 11 U.S.C. § 502.

2.14   <u>Class 22</u>   All unsecured claims that are subordinated to all other unsecured claims, including any claims for penalties not related to actual pecuniary loss and any civil penalties of any governmental authority, together with any pre-petition interest accrued on such claims.

2.15   <u>Class 23</u>   All holders of equity interests in All-State.

2.16   <u>Class 24</u>   All holders of any untimely filed claims in either the All-State bankruptcy case, Mr. Gibler's bankruptcy case, or both.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

3.1.    <u>Unclassified Claims</u>. Under §1123(a)(1) of the Code, administrative expense claims, and priority tax claims are not in classes.

3.2.    <u>Administrative Expense Claims.</u> Under 11 U.S.C. §1123(a)(1), certain administrative expense claims are not required to be classified.  For purposes of this Plan, such unclassified claims consist of the allowed administrative expense claims under 11 U.S.C. § 507(a)(2).  Each holder of an allowed unclassified administrative expense claim will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

(a)    Taxes arising post-petition and pre-confirmation qualify as an administrative expense because accruing tax is recognized as a necessary expense of an on-going bankruptcy estate. 11 U.S.C. §§ 503(b), 507(a)(2).

(b)    The IRS asserts that All-State has accrued post-petition delinquent tax debt which includes Form 940, for the period ending December 31, 2017.  The IRS asserts that All-State's post-petition tax liabilities include:

• Form 941 liability for period ending December 31, 2016: $515.36; and
• Form 940 (unemployment tax) liability for period ending December 31, 2017: $758.19.

(c)    All-State disputes the post-petition tax liability as it paid all post-petition taxes, including payroll taxes, when due.

3.3.    <u>Other Administrative Expense Claims</u>.  Holders of all other allowed claims entitled to priority under 11 U.S.C. § 507 (except administrative expense claims under 11 U.S.C. § 507(a)(2), employee claims under 11 U.S.C. §507(a)(4), and priority tax claims under 11 U.S.C. § 507(a)(8)). Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.4    <u>Priority Claims of Employees pursuant to 11 U.S.C. §507(a)(4)</u>.  To the extent any employees have unsecured priority claims against All-State for wages, salaries, commissions, etc., up to $12,850 per individual earned within the 180 days before the Petition Date, pursuant to 11 U.S.C. § 507(a)(4), such claimants shall have an allowed claim for the amount earned in the 180 days prior to the Petition Date in an amount not to exceed $12,850.  Such claims will be paid on the Effective Date in full.  All-State does not believe that any employee holds such claims as it was

-4-

current with all payroll obligations on the filing date. As a result, there are no creditors holding such claims. To the extent there are creditors holding such priority claims, their claim shall bear interest at the rate of 4.0% per annum and shall be paid in full within five (5) years from the Petition Date in equal monthly installments commencing on the Effective Date of the Plan.

3.5.     <u>Priority Tax Claims</u>.  Any general unsecured claim of any entity asserting a priority tax claim under this section, including any claim for penalties not related to actual pecuniary loss, shall be treated as provided for in Class 22 of the Plan, unless subordinated by separate order of the Court. The holders of priority tax claims under 11 U.S.C. § 507(a)(8) will be paid as follows:

a.     **Priority Tax Claim of IRS Against All-State.** The IRS asserts a priority claim in the amount of $3,676,830.79 for taxes and interest up to the Petition Date in All-State's bankruptcy case. The Debtor disputes such amounts due to the pre-petition theft and inaccurate payroll reporting by its prior Controller. The Debtor asserts that the amount owed is less than $2,832,738.10. The Debtor has filed an Objection to the IRS' Proof of Claim. The IRS has opposed the Debtor's Objection. The Court has set an initial hearing for March 7, 2019.

i.     To the extent the IRS has an allowed priority claim, such claim shall bear interest at the rate determined by 26 U.S.C. §6621, and shall be paid in full within five (5) years from the Petition Date in equal monthly installments commencing on the Effective Date of the Plan.

ii.     To the extent any portion of the IRS' Priority Tax Claim which are for penalties and/or damages that are not compensation for actual pecuniary loss and the Court subordinates such amounts to all other unsecured claims, all subordinated amounts shall be paid as provided for pursuant to Class 22 of the Plan.

iii.     In an event of All-State's default of this Joint Plan, the administrative collection powers and rights of IRS shall be reinstated as they existed pre-petition, including, but not limited to, the powers of levy, seizure, and sale under applicable non-bankruptcy law, provided however that the IRS shall give All-State a ten (10) calendar day notice of default prior to taking any action. Such notice period shall originate from the first notice of default. Provided however, that no notice shall be required if the bankruptcy case is dismissed or converted.

iv.     IRS shall be entitled to offset any overpayment of taxes or tax refund to which All-State may be entitled during the pendency of the case and/or the Plan to any liability owed by All-State.

b.   **Priority Tax Claim of Colorado Department of Revenue against All-State.**
Colorado Department of Revenue ("Revenue") asserts a priority unsecured claim in
the amount of $103,360.00. The Debtor asserts that Revenue's unsecured priority
claim is overstated by approximately $20,000 as a result of a third party paying the
Debtor's payroll taxes in the first and second quarter of 2017. The Debtor has filed
an Objection to Revenue's claim. Revenue has opposed the Debtor's Objection. The
Court has set an initial hearing for March 7, 2019. The Debtor, Mr. Gibler and
Revenue will enter into a settlement agreement providing for the allowance of
Revenue's priority claim, to be approved by the Bankruptcy Court. Such settlement
contemplates the treatment herein.

i.   Revenue shall have an Allowed Priority Claim in the amount of $103,360.00
or such other amount as determined by the Bankruptcy Court. The claim
shall bear interest at the statutory rate of 8.0% per annum and shall be paid
in full within five (5) years from the Petition Date in equal monthly
installments commencing on the Effective Date of the Plan.

ii.   To the extent any portion of Revenue's Priority Tax Claim are for penalties
and/or damages that are not compensation for actual pecuniary loss and the
Court subordinates such amounts to all other unsecured claims, all
subordinated amounts shall be paid as provided for pursuant to Class 22 of
the Plan.

iii.   In an event of All-State's default of this Joint Plan, the administrative
collection powers and rights of Revenue pre-petition, including, but not
limited to, the powers of levy, seizure, and sale under applicable non-
bankruptcy law, provided however that the Revenue shall give All-State a ten
(10) calendar day notice of default prior to taking any action. Such notice
period shall originate from the first notice of default. Provided however, that
no notice shall be required if the bankruptcy case is dismissed or converted.

iv.   Revenue shall be entitled to offset any overpayment of taxes or tax refund to
which All-State may be entitled during the pendency of the case and/or the
Plan to any liability owed by All-State.

c.   **Priority Tax Claim of Internal Revenue Service against Mr. Gibler.** The Internal
Revenue Service asserts an unsecured priority tax claims for unpaid income taxes
owed by Mr. Gibler as of the Petition Date in the amount of $22,461.80. A portion
of the IRS' claim was estimated. Mr. Gibler has now filed his 2016 or 2017 tax
returns and received refunds for those years. As a result, Mr. Gibler disputes this
Claim. Mr. Gibler shall file an Objection to the IRS' Proof of Claim no later than 60
days after the Effective Date.

i.      To the extent the IRS has an allowed priority claim, such claim shall interest at the rate determined by 26 U.S.C. §6621 and shall be paid in full within five (5) years from the Petition Date in equal monthly installments commencing on the Effective Date of the Plan.

ii.     To the extent any portion of the IRS' Priority Tax Claim are for penalties and/or damages that are not compensation for actual pecuniary loss and the Court subordinates such amounts to all other unsecured claims, all subordinated amounts shall be paid as provided for pursuant to Class 22 of the Plan.

iii.    In an event of Mr. Gibler's default of this Joint Plan, the administrative collection powers and rights of IRS shall be reinstated as they existed pre-petition, including, but not limited to, the powers of levy, seizure, and sale under applicable non-bankruptcy law, provided however that the IRS shall give Mr. Gibler a ten (10) calendar day notice of default prior to taking any action.  Such notice period shall originate from the first notice of default. Provided however, that no notice shall be required if the bankruptcy case is dismissed or converted.

iv.     IRS shall be entitled to offset any overpayment of taxes or tax refund to which Mr. Gibler may be entitled during the pendency of the case and/or the Plan to any liability owed by Mr. Gibler.

v.      To the extent any claim of the IRS against Mr. Gibler is duplicative of the IRS' claim(s) against the Debtor, such claim shall be paid by the Debtor prior to any payment by Mr. Gibler on account of the same indebtedness.

d.  **Priority Tax Claim of Colorado Department of Revenue against Mr. Gibler.** The Colorado Department of Revenue asserts an unsecured priority claim against Mr. Gibler for unpaid wage withholding taxes as of the Petition Date under 11 U.S.C. § 507(a)(8) in the amount of $314,983.00.  Mr. Gibler asserts that this Claim is duplicative of the claim Revenue filed against All-State.  As a result, Mr. Gibler disputes this Claim. The Debtor, Mr. Gibler and Revenue will enter into a settlement agreement providing for the allowance of Revenue's priority claim, to be approved by the Bankruptcy Court.  Such settlement contemplates the treatment herein.

i.      Revenue shall have an Allowed Priority Claim in the amount of $314,983.00 or such other amount as determined by the Bankruptcy Court.  Such claim shall bear interest at the statutory rate of 8.0% per annum.

      ii.    Unless and until All-State defaults on its payments to Revenue, Mr. Gibler shall not make any payments on this Claim. All payments by All-State shall be credited towards Revenue's Allowed Priority Claim against Mr. Gibler.

      iii.    To the extent Mr. Gibler is required to pay any portion of the Allowed Claim, such Claim shall be paid in full within five (5) years from the Petition Date in equal monthly installments commencing on the Effective Date of the Plan.

      iv.    To the extent any portion of Revenue's Priority Tax Claim are for penalties and/or damages that are not compensation for actual pecuniary loss and the Court subordinates such amounts to all other unsecured claims, all subordinated amounts shall be paid as provided for pursuant to Class 22 of the Plan.

      v.    In an event of Mr. Gibler's default of this Joint Plan, the administrative collection powers and rights of Revenue shall be reinstated as they existed pre-petition, including, but not limited to, the powers of levy, seizure, and sale under applicable non-bankruptcy law, provided however that Revenue shall give Mr. Gibler a ten (10) calendar day notice of default prior to taking any action. Such notice period shall originate from the first notice of default. Provided however, that no notice shall be required if the bankruptcy case is dismissed or converted.

      iv.    Revenue shall be entitled to offset any overpayment of taxes or tax refund to which Mr. Gibler may be entitled during the pendency of the case and/or the Plan to any liability owed by Mr. Gibler.

      v.    To the extent any claim of Revenue against Mr. Gibler is duplicative of the Revenue's claim(s) against the Debtor, such claim shall be paid by the Debtor prior to any payment by Mr. Gibler on account of the same indebtedness.

e.    **Priority Tax Claim of North Dakota Department of Revenue.** North Dakota Department of Revenue asserts a priority unsecured claim in the amount of $834.80 for unpaid wage withholding taxes and interest. To the extent the Department has an allowed priority claim, the Claim will such claim shall be paid on the Effective Date of the Plan.

    3.6.   <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of the Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1.    **Wells Fargo Bank, N.A.**  Class 1 consists of the secured claim of Wells Fargo Bank, N.A. against All-State to the extent allowed as a secured claim under 11 U.S.C. § 506.  Pre-petition, in or around October of 2014, All-State entered into a Revolving Line of Credit with Wells Fargo in the principal amount of $1,500,000 (the "Wells Fargo Loan"). The Wells Fargo Loan replaced a prior loan with Wells Fargo and has been extended several times.  To secure the Wells Fargo Loan, All-State granted Wells Fargo a lien on substantially all of its assets, including its accounts, accounts receivable and cash, as more specifically set forth in the Financing Statement filed with the Colorado Secretary of State, which was continued several times, including most recently, on June 27, 2016 at Reception No. 20162057739.  Wells Fargo has a properly perfected lien on All-State's assets, including its cash and cash equivalents, furniture, fixtures, equipment, accounts receivable, cash, general intangibles, etc.  As of the filing date, Wells Fargo asserts that All-State owes the amount of $1,203,900.00.  The total market value of All-State's assets that are encumbered by exceeds the indebtedness. Class 1 is impaired under the Plan.  All-State shall treat the Class 1 Claim as follows:

4.1.1   Wells Fargo shall have an Allowed Secured Claim in the amount of $1,203,900.00 less all adequate protection payments made during the case (approximately $100,000).

4.1.2   All-State shall issue a new promissory note to Wells Fargo in the amount of the Allowed Secured Claim (the "New WF Note") as payment on the Allowed Secured Claim on the Effective Date.  The New Note shall bear interest at the rate of 7.00% per annum on a 10 year amortization.  The maturity date of the New WF Note shall be five (5) years from the Effective Date.

4.1.3   The New WF Note shall provide for equal monthly installment payments of principal and interest.  All-State estimates that monthly principal and interest payments are estimated to be $13,978.30.  At the end of the five (5) year term, all remaining amounts due and owing shall be paid in full.

4.1.4   The New WF Note shall be secured by Wells Fargo's existing lien on All-State's assets pursuant to 11 U.S.C. § 506(a).

4.1.5   All existing debt instruments of All-State to Wells Fargo on its Class 1 Claim, including the Promissory Note, any modification agreements, loan agreements shall be cancelled on the Effective Date.  Provided however, that all existing collateral documents, including that Financing Statement shall remain in full force and effect to secure the New Note.

4.1.6   All-State shall treat any remaining deficiency amount of the Class 1 Claim as a general unsecured claim in accordance with Class 8 of this Plan.

4.1.7   All-State shall have the option to pre-pay the Allowed Secured Claim of Wells Fargo at any time without premium or penalty.  All-State shall provide Wells Fargo 10 days written notice if All-State intends to payoff the Class 1 claim prior to completion of the payments herein.

4.1.8   In the event of an uncured default by the Debtor of the payments to Wells Fargo, the interest rate on the Class 1 claim shall revert to the original contract rate in the Promissory Note as of the Petition Date and accrue thereafter according to the original loan documents and 11 U.S.C. § 506.

4.2   **Wells Fargo Equipment Finance, Inc.**  Class 2 consists of the secured claim of Wells Fargo Equipment Finance, Inc. to the extent allowed as a secured claim under 11 U.S.C. § 506.  On or about September 22, 2015, the Debtor executed a Single Sided Lease Agreement -$1 Purchase Option (the "Lease") with WFEF for the lease of a New 2015 Nissan PF80YLP Forklift (the "Forklift").  WFEF asserts that the present balance owed on the Lease is $30,540.40.  Under the terms of the Lease, the Debtor is required to make monthly payments of $792. At the end of the Lease, the Debtor may purchase the Forklift for $1.  WFEF recorded a Financing Statement with the Colorado Secretary of State on October 28, 2015 at Reception No. 20152098816. WFEF therefore asserts a lien on the Forklift. The Debtor asserts that the Lease is a disguised secured transaction such that the Lease is not a true lease under C.R.S. §4-2.5-101, *et seq.  See Colorado Leasing Corp. v. Borquez*, 738 P.2d 377 (Colo. App. 1986).  The Debtor asserts that the present value of the Forklift is only $16,942.19.  Class 2 is impaired under the Plan. The Debtor shall treat the Class 2 Claim as follows:

4.2.1   WFEF shall have an Allowed Class 2 Secured Claim in the amount of $16,942.19, less all adequate protection payments made during the case (approximately $10,000). Such claim shall bear interest at the rate of seven percent (7.00%) per annum. The Debtor shall make equal monthly payments of principal and interest starting the first day of the first month after the Effective Date, and each month thereafter, for a period of one (1) year.

4.2.2   The Class 2 claimant shall retain its lien on the Forklift per the security agreement, in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 2 Secured Claim, pursuant to 11 U.S.C. § 506(a).

4.2.3   The Debtor shall treat any remaining deficiency amount of the Class 2 Claim as a general unsecured claim in accordance with Class 8 of this Plan.

4.2.4   The Debtor shall have the option to pre-pay the Allowed Secured Claim of WFEF at any time without premium or penalty.

4.3     **Colorado Department of Revenue (Secured).** Class 3 consists of the secured claim of Colorado Department of Revenue ("Revenue") for unpaid trust fund taxes under C.R.S. §§ 39-22-604(7)(a) and 39-26-117(1)(a). Pre-petition, as a result of the theft and negligence of the former Controller for All-State, the Debtor fell behind in its employee tax withholding payments to the State of Colorado. Revenue filed a proof of claim in All-State's bankruptcy case asserting it is owed the principal amount of $349,433.00, or as subsequently amended. The Debtor asserts that the amount owed on the Secured Claim is less than $330,000.00 as a result of an overstated payroll. The Debtor has filed an Objection to Revenue's Secured Claim. The Department has opposed the Debtor's Objection. The Court has set an initial hearing for March 7, 2019. Pursuant to C.R.S. § 39-22-604 (2017), Revenue asserts a secured lien against all of the Debtor's assets for unpaid taxes, interest, and penalties. The Debtor, Mr. Gibler and Revenue will enter into a settlement agreement providing for the allowance of Revenue's claim, to be approved by the Bankruptcy Court. Such settlement contemplates the treatment herein. The Class 3 Claim is impaired under the Plan and shall be treated as follows:

4.3.1   Revenue shall have an Allowed Secured Claim in the amount of $349,433.00 or such other amount as determined by the Bankruptcy Court. All adequate protection payments made to Revenue prior to the Effective Date shall be applied to reduce the principal balance of Revenue's Secured Claim. Such claim shall bear interest at the statutory rate of eight percent (8.0%) per annum, pursuant to C.R.S. § 39-21-110.5. The Class 3 Claim shall be paid in full within five (5) years from the Petition Date, in equal monthly installments of principal and interest. All-State shall commence payments on the first day of the first month following the Effective Date, and thereafter on the first day of each month until paid in full.

4.3.2   Pursuant to 11 U.S.C. § 1107(a), in conjunction with 28 U.S.C. §§ 959(b) and 960(b), any and all post-petition arrears for unpaid payroll taxes, interest, and penalties due to Revenue shall be cured as soon as possible, and no later than immediately prior to the Effective Date.

4.3.3   Payments shall be made payable to the Colorado Department of Revenue, shall be identified with All-State's taxpayer ID number and bankruptcy case number and shall be sent to the following address: Colorado Department of Revenue, 1375 Sherman Street, Denver, Colorado 80203.

4.3.4   Pursuant to C.R.S. § 4-9-101, *et. seq.*, and 11 U.S.C. § 506, the Class 3 claimant shall retain its pre-petition lien in the same priority it had, if any, on property of the Reorganized Debtor in the same priority as existed on the Petition Date, pending payment in full of the Class 3 claim pursuant to 11

U.S.C. § 1129(b)(2)(A)(i)(I). To the extent that any assets of All-State are sold outside the ordinary course of business, All-State will pay the net proceeds of such sale to the secured creditors in the order of their lien priority.

4.3.5   In an event of a default of this Joint Plan, the administrative collection powers and rights of Revenue shall be reinstated as they existed pre-petition, including, but not limited to, the powers of levy, seizure, and sale under applicable non-bankruptcy law, provided however that Revenue shall give the Debtor a ten (10) calendar day notice of default prior to taking any action. Such notice period shall originate from the first notice of default. Provided however, that no notice shall be required if the bankruptcy case is dismissed or converted.

4.3.6   Revenue shall be entitled to offset any overpayment of taxes or tax refund to which All-State may be entitled during the pendency of the case and/or the Plan to any liability owed by All-State.

4.3.7   Upon payment of the secured portion of its claim, any lien asserted by Revenue against any asset of All-State shall be deemed released and of no further force and effect. All-State shall be entitled to file any necessary documentation with any appropriate authority evidencing the release of such lien.

4.3.8   To the extent any portion of Revenue's Claim are for penalties and/or damages that are not compensation for actual pecuniary loss and the Court subordinates such amounts to all other unsecured claims, all subordinated amounts shall be paid as provided for pursuant to Class 22 of the Plan.

4.4   **Colorado Department of Labor.** Class 4 consists of the priority secured claim of Colorado Department of Labor ("Labor") for unpaid unemployment insurance premiums owed by All-State. Under C.R.S. § 8-79-103(1), Labor asserts a first and prior lien on all assets of All-State. Pre-petition, as a result of the theft and negligence of the former Controller for All-State, the Debtor fell behind in its unemployment insurance premiums to the State of Colorado. Labor filed a proof of claim in All-State's bankruptcy case asserting it is owed the principal amount of $509,268.41. The Debtor asserts that the Secured Claim of Labor is less than $500,000 as a result of the overstated payroll. The Debtor has filed an Objection to Labor's Claim. Labor has opposed the Debtor's Objection. The Court has set an initial hearing for March 7, 2019. The Debtor, Mr. Gibler and Labor will enter into a settlement agreement providing for the allowance of Labor's claim, to be approved by the Bankruptcy Court. Such settlement contemplates the treatment herein. The Class 4 Claim is impaired under the Plan and shall be treated as follows:

4.4.1 Labor shall have an Allowed Unsecured Priority Claim in the amount of $509,268.41 or such other amount as determined by the Bankruptcy Court. All adequate protection payments made to Labor prior to the Effective Date shall be applied to reduce the principal balance of Labor's Unsecured Priority Claim. Such claim shall bear interest at the statutory rate of eighteen percent (18.0%) per annum, pursuant to C.R.S. § 8-79-101. The Class 4 Claim shall be paid in full within five (5) years from the Petition Date, in equal monthly installments of principal and interest. All-State shall commence payment on the first day of the first month following the Effective Date, and thereafter on the first day of each month until paid in full.

4.4.2 Pursuant to 11 U.S.C. § 1107(a), in conjunction with 28 U.S.C. §§ 959(b) and 960(b), any and all post-petition arrears for unemployment insurance premiums, taxes, interest, and penalties due to Labor shall be cured as soon as possible, and no later than immediately prior to the Effective Date.

4.4.3 Payments shall be made payable to the Colorado Department of Labor shall be identified with All-State's taxpayer ID number and bankruptcy case number and shall be sent to the following address: Colorado Department of Labor, 1375 Sherman Street, Denver, Colorado 80203.

4.4.4 Pursuant to C.R.S. § 8-79-103(1) and 11 U.S.C. § 506, the Class 4 claimant shall retain its pre-petition lien in the same priority it had, if any, on property of the Reorganized Debtor in the same priority as existed on the Petition Date, pending payment in full of the Class 4 claim pursuant to 11 U.S.C. § 1129(b)(2)(A)(i)(I). To the extent that any assets of All-State are sold outside the ordinary course of business, All-State will pay the net proceeds of such sale to the secured creditors in the order of their lien priority.

4.4.5 In an event of a default of this Joint Plan, the administrative collection powers and rights of Revenue shall be reinstated as they existed pre-petition, including, but not limited to, the powers of levy, seizure, and sale under applicable non-bankruptcy law, provided however that Revenue shall give the Debtor a ten (10) calendar day notice of default prior to taking any action. Such notice period shall originate from the first notice of default. Provided however, that no notice shall be required if the bankruptcy case is dismissed or converted.

4.4.6 Labor shall be entitled to offset any overpayment of unemployment insurance premiums or tax refund to which All-State may be entitled during the pendency of the case and/or the Plan to any liability owed by All-State.

-13-

4.4.7   Upon payment of the secured portion of its claim, any lien asserted by Labor against any asset of All-State shall be deemed released and of no further force and effect.  All-State shall be entitled to file any necessary documentation with any appropriate authority evidencing the release of such lien.

4.4.8   To the extent any portion of Labor's Claim are for penalties and/or damages that are not compensation for actual pecuniary loss and the Court subordinates such amounts to all other unsecured claims, all subordinated amounts shall be paid as provided for pursuant to Class 22 of the Plan.

4.5     **Chrysler Capital.** Class 5 consists of the secured claim of Chrysler Capital.  Pre-petition, All-State entered into a Retail Installment Sale Contract for the purchase of a 2015 Dodge Ram 1500 Crew Cab pickup, Account No. xxxx5500, VIN xxx5659 ("Pickup No. 1") under which All-State financed the principal amount of $45,418.58, with Johnson Auto Plaza, Inc. on December 31, 2015.  This Agreement was assigned to Chrysler Capital.  Under this Agreement, All-State is required to make 60 equal monthly installment payments of $848.09.  Chrysler Capital filed a proof of claim in All-State's bankruptcy case in the amount of $34,516.92.  All-State asserts that the current market value of the Pickup No. 1 is $24,575 according to NADA.  Class 5 Claim is impaired under the Plan and shall be treated as follows:

4.5.1   Chrysler Capital shall have an Allowed Secured Claim in the amount of $24,575.  Such claim shall bear interest at the rate of four percent (4.00%) per annum.  All-State shall make equal monthly payments of approximately $452.59 of principal and interest starting the first day of the first month after the Effective Date, and each month thereafter, for a period of six (6) years.

4.5.2   The Class 5 claimant shall retain its lien on the Pickup No. 1 in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 5 Secured Claim, pursuant to 11 U.S.C. § 506(a).

4.5.3   All-State shall treat any remaining deficiency amount of the Class 5 Claim as a general unsecured claim in accordance with Class 8 of this Plan.

4.6     **Chrysler Capital.** Class 6 consists of the secured claim of Chrysler Capital.  Pre-petition, All-State entered into a Retail Installment Sale Contract for the purchase of a 2015 Dodge Ram 1500 Crew Cab pickup, Account No. xxxx5476, VIN xxx5589 ("Pickup No. 2") under which All-State financed the principal amount of $44,849.39, with Johnson Auto Plaza, Inc. on December 31, 2015.  This Agreement was assigned to Chrysler Capital.  Under this Agreement, All-State is required to make 60 equal monthly installment payments of $837.46.  Chrysler Capital filed a proof of claim in All-State's bankruptcy case in the amount of $34,082.46.  All-State asserts that the current market value of the Pickup No. 2 is $24,575 according to NADA.  Class 6 Claim is impaired under the Plan and shall be treated as follows:

    4.6.1    Chrysler Capital shall have an Allowed Secured Claim in the amount of $24,575. Such claim shall bear interest at the rate of four percent (4.00%) per annum. All-State shall make equal monthly payments of approximately $452.59 of principal and interest starting the first day of the first month after the Effective Date, and each month thereafter, for a period of six (6) years.

    4.6.2    The Class 6 claimant shall retain its lien on the Pickup No. 2. in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 6 Secured Claim, pursuant to 11 U.S.C. § 506(a).

    4.6.3    All-State shall treat any remaining deficiency amount of the Class 6 Claim as a general unsecured claim in accordance with Class 8 of this Plan.

    **4.7    Chrysler Capital.** Class 7 consists of the secured claim of Chrysler Capital. Pre-petition, All-State entered into a Retail Installment Sale Contract for the purchase of a 2016 Dodge Ram 1500 pickup, Account No. xxxx5195, VIN xxx4002 ("Pickup No. 3") under which All-State financed the principal amount of $56,368.71, with Johnson Auto Plaza, Inc. on December 31, 2015. This Agreement was assigned to Chrysler Capital. Under this Agreement, All-State is required to make 60 equal monthly installment payments of $1,052.56. Chrysler Capital filed a proof of claim in All-State's bankruptcy case in the amount of $44,849.39. All-State asserts that the current market value of the Pickup No. 3 is $27,050 according to NADA. Class 6 Claim is impaired under the Plan and shall be treated as follows:

    4.7.1    Chrysler Capital shall have an Allowed Secured Claim in the amount of $27,050. Such claim shall bear interest at the rate of four percent (4.00%) per annum. The Debtor shall make equal monthly payments of approximately $498.17 of principal and interest starting the first day of the first month after the Effective Date, and each month thereafter, for a period of six (6) years.

    4.7.2    The Class 7 claimant shall retain its lien on the Pickup No. 3 in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 7 Secured Claim, pursuant to 11 U.S.C. § 506(a).

    4.7.3    The Debtor shall treat any remaining deficiency amount of the Class 7 Claim as a general unsecured claim in accordance with Class 8 of this Plan.

    **4.8    General Unsecured Claims (All-State).** Class 8 consists of all creditors holding Allowed Unsecured Claims against All-State who are not insiders of either Debtor, including any allowed claims not otherwise subordinated by Order of the Bankruptcy Court and any deficiency claim of any secured creditor, but excluding any claim by any governmental agency for any penalties and/or are not related to actual pecuniary loss. **To the extent any holder of a Class 8 Claim also has a Class 14 Claim, such creditor shall only be paid as a Class 8 Creditor. Class 8 is impaired under the Plan.** All-State shall treat Class 8 claims as follows:

4.8.1   Class 8 creditors shall receive pro-rata distributions on an annual basis from the All-State Creditor Fund within thirty (30) days of each anniversary of the Effective Date for a period of six (6) years.

B.     *Classes of Creditors in Mr. Gibler's Bankruptcy Case.*

4.9     <u>Class 11</u>   The Class 11 Claim consists of the Allowed Secured Claim held by CoBiz d/b/a Colorado Business Bank in the amount of $315,354.91 as of the Petition Date, plus accruing interest, costs and attorneys' fees, and minus applied adequate protection payments.  On April 20, 2016, Mr. Gibler, as grantor, executed a deed of trust in favor of CoBiz securing this Class 11 Claim against certain real property owned by Mr. Gibler with an address commonly known as 107 and 109 East Central Avenue, Wiggins, CO 80654 (the "Wiggins Property").  This deed of trust was recorded with the Morgan County Clerk and Recorder on April 25, 2016.  Class 11 is unimpaired under the Plan.  The Class 11 Claim will be treated under the Plan as follows:

4.9.1   The total amount of the Class 11 claim will be allowed in the amount due on the Effective Date of the Plan and paid in accordance with the applicable loan documents, copies of which were attached to the proof of claim filed by the Class 11 Claimant. The amount of monthly payments is $2,998.18 with a balloon payment for the remaining balance on the maturity date of April 20, 2021.  Non-default interest shall continue to accrue at a fixed rate of 4.75% per annum.

4.9.2   The lien position held by the Class 11 claimant shall be unaltered by the Plan, and shall remain in effect until the Class 11 creditor's Allowed Secured Claim is satisfied or the Wiggins Property is sold in accordance with the applicable loan documents.

4.9.3   As of the Effective Date of the Plan, the Class 11 claim shall bear interest in accordance with the applicable loan documents, copies of which were attached to the proof of claim filed by the Class 11 Claimant.

4.9.4   Mr. Gibler may pre-pay the Class 11 Claim, including all principal, interest, and fees without penalty at any time.

4.10     <u>Class 12</u>   The Class 12 Claim consists of the Allowed Secured Claim held by Ditech f/k/a Green Tree Servicing, LLC in the amount of $126,019.48. Such claim is secured by a first mortgage on the Debtor's real property located at 1211 SW 110th St., Augusta, Kansas (the "Augusta Property"). In June 2007, Mr. Gibler entered into an Installment Contract for Deed ("Contract") with Cleve Smith and Jaime Smith to sell the Augusta Property. An Affidavit of Equitable Interest was recorded in favor of the Smiths with the Butler County, Kansas Register of Deeds office. Additionally, Mr. Gibler executed a Joint Tenancy Warranty Deed conveying Augusta to the Smiths, and that Warranty Deed was placed in escrow pending full performance under the Contract.  The

Smiths wish to exercise their right to purchase the Augusta Property.  Thus, the Debtor has filed a Motion to Sell the Augusta Property, which Motion is pending in the Bankruptcy Court. Class 12 shall be paid in full as a result of a sale of the Augusta Property. Class 12  is unimpaired under the Plan.

4.11   <u>Class 13</u>  Class 13 consists of the claim of Wells Fargo Bank, N.A., arising out of a pre-petition Equity Line with FlexAbility Agreement and Disclosure Statement, to the extent allowed as a secured claim under 11 U.S.C. § 506 which is secured by a deed of trust against real property owned by Mr. Gibler in Jefferson County, Colorado known by street and number as 7065 Zephyr Circle, Arvada Colorado 80004, in the amount of $110,649.45. Class 13 is unimpaired under the Plan.  The Class 13 Claim will be treated under the Plan as follows:

4.11.1   The principal amount of the Class 13 claim will be allowed in the amount due on the Effective Date of the Plan in accordance with the proof of claim filed by the Class 13 Claimant or in an amount otherwise allowed by the Court.

4.11.2   The lien position held by the Class 13 claimant shall be unaltered by the Plan, and shall remain in effect until the Class 13 creditor's secured claim is satisfied or the underlying Property is sold.

4.11.3   As of the Effective Date of the Plan, the Class 13 claim shall bear interest in accordance with the pre-petition agreement between the Debtor and Class 13 claimant.

4.11.4   Mr. Gibler may pre-pay the Class 13 Claim, including all principal and interest, without penalty at any time.

4.12   **General Unsecured Claims (Mr. Gibler)**.  Class 14 consists of all creditors holding Allowed Unsecured Claims against Mr. Gibler who are not insiders of either Debtor, including any allowed claims not otherwise subordinated by Order of the Bankruptcy Court and any deficiency claim of any secured creditor, but excluding any claim by any governmental agency for any penalties and/or are not related to actual pecuniary loss.  **To the extent any holder of a Class 14 Claim also has a Class 8 Claim, such creditor shall only be paid as a Class 8 Creditor.  Class 14 is impaired under the Plan.**  Mr. Gibler shall treat Class 14 claims as follows:

4.12.1   Class 14 creditors shall receive pro-rata distributions on an annual basis from the Gibler Creditor Fund within thirty (30) days of each anniversary of the Effective Date for a period of six (6) years.

C.   *Classes of Creditors in Connection with Both Bankruptcy Cases.*

4.13   **Insider Unsecured Claims Against Both Debtors.** Class 21 consists of all insider unsecured claims against the Debtors to the extent allowed under 11 U.S.C. § 502, including Gib's

Performance Horses, LLC.  Class 21 is impaired.  Class 21 shall receive nothing on account of their claims.

4.14 **Class 22.  All Unsecured Claims against both Debtors.**  Class 22 consists of all unsecured claims that are subordinated to all other unsecured claims, including any claims for penalties not related to actual pecuniary loss and any civil penalties of any governmental authority, together with any pre-petition interest accrued on such claims. Such class includes the subordinated penalty claims of the IRS, the Colorado Department of Revenue and the Colorado Department of Labor and Employment.  Pursuant to 11 U.S.C. §726, if the Cases were cases under Chapter 7, no creditor holding a Class 8 or Class 14 claim would be entitled to payment until all other claims, including all other general unsecured claims, are paid in full.  **Class 22 is impaired under the Plan.** Class 22 shall receive nothing on account of their claims.

4.15 **Class 23.  All-State Equity Interests.** Class 23 consists of all holders of equity interests in All-State, including Mr. Gibler.  The Class 23 Equity Interests are Impaired. The treatment of the Class 23 claims are dependent upon whether the Plan is confirmed as a Consensual Plan with the acceptance of each class of creditors or by Cramdown in the event of a rejecting class.

4.15.1 Consensual Plan: In the event that the Plan is confirmed as a Consensual Plan, with the acceptance of each class, the Class 23 claimants will retain their shareholder interests and therefore hold, collectively, 100% of the outstanding shares of the Reorganized All-State.

4.15.2 Treatment under Cramdown Plan:  The ownership interests of All-State's shares shall be canceled subject to the provisions of this Plan.

(1) New stock certificates will be issued to the All-State Creditors' Trust established pursuant to the terms of the within Plan and that certain "All-State Creditors' Trust Agreement".  The stock certificates issued by All-State to the Trust shall be held in trust pursuant to the terms of the All-State Creditors' Trust Agreement.

(2) Upon confirmation of this Joint Plan and transfer of the newly issued shares of common voting stock to the All-State Creditors' Trust, the All-State Creditors' Trust shall transfer ten percent (10%) of all such shares to Mr. Gibler in consideration of his agreement to remain as an officer and director of All-State and to assist All-State with performance of this Joint Plan post-confirmation. On each anniversary of the Effective Date of the Joint Plan All-State Creditors' Trust shall transfer an additional 18 percent (18%) of the stock certificates then being held by the All-State Creditors' Trust to Mr. Gibler.  The All-State Creditors' Trust will transfer such shares to Mr. Gibler as provided for herein as long as the Debtors are not in

-18-

default under the terms of its Plan and/or pursuant to the provisions of the All-State Creditors' Trust Agreement. In case of an uncured default, all shares issued to Mr. Gibler shall be returned to the All-State Creditors Trust.

(3)  Following confirmation of the Joint Plan and during the pendency of the Joint Plan, Mr. Gibler shall be entitled to vote all shareholder interests only to authorize ordinary course of business transactions of the Reorganized All-State. Transactions outside the ordinary course of the Reorganized All-State's business shall require approval by the Beneficiaries' Committee established pursuant to the terms of the within Plan to govern the All-State Creditors' Trust as a established herein.

4.16  **Class 24. Untimely Claims Against Either and/or Both Debtors.** Class 24 consists of all holders of any untimely filed claim in either the All-State bankruptcy case, Mr. Gibler's bankruptcy case, or both. Class 24 is Impaired. Class 24 shall receive nothing on account of their claims.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1.  <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection.

5.2.  <u>Disallowed Claims</u>. On July 24, 2017, the Court entered an order establishing **October 31, 2017** as the deadline for filing proof of claims in the All-State bankruptcy case. Similarly, the Court entered an order establishing **March 26, 2018,** as the deadline for filing proof of claims in Mr. Gibler's bankruptcy case. Pursuant to the order, creditors whose claims were listed in the Debtors' schedules as disputed, contingent or unliquidated and who did not file proofs of claims by the deadline are disallowed with respect to the Debtors' bankruptcy estate.

5.3.  <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a disputed claim unless such claim is allowed. Provided however, that the Debtor and/or Mr. Gibler, as applicable, shall escrow all interim distributions to any disputed creditor while such claims are disputed. Upon final resolution and allowance of any disputed claim, the Debtor and/or Mr. Gibler, as applicable, shall disburse all funds in escrow applicable to the creditor holding a then Allowed Claim and such amounts shall be credited as payments on the Allowed Claim.

5.4.  <u>Settlement of Disputed Claims</u>. The Debtors will have the power and authority to settle and compromise a disputed claim under $25,000 without further court approval. The Debtors

shall seek court approval to compromise any claims in excess of $25,000 in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     Assumed Executory Contracts and Unexpired Leases.

a.      The Debtors reject the following executory contracts and/or unexpired leases effective upon the Effective Date of the Plan:

i.      Road Sprinkler Fitters Local Union 669, Collective Bargaining Agreement.

b.      The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming the Plan, upon the effective date of the Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1.    Vesting of Estate Assets of All-State. On the Confirmation Date, all assets of the All-State bankruptcy estate shall be transferred to All-State free and clear of all liens, claims, and interests of creditors, equity holders, and other parties in interest, except as otherwise provided herein.

7.2.    Effect of Confirmation on Assets of Mr. Gibler. Upon confirmation of the Joint Plan, all exempt assets of Mr. Gibler shall be vested in Mr. Gibler as provided in this Plan, free and clear of all Claims and Interests, except as specifically provided in this Plan. If confirmation of this Plan is sought pursuant to 11 U.S.C. § 1129(b), all non-exempt property of the Mr. Gibler's bankruptcy estate as of the Effective Date of the Plan shall remain property of his bankruptcy estate during the term of the Plan. Upon completion of all payments under this Plan, and upon entry of discharge, the non-exempt property of Mr. Gibler's bankruptcy estate shall be vested in Mr. Gibler.

7.3.    The Debtors shall not, except as otherwise provided in this Plan, be liable to repay any debts which accrued prior to the Confirmation Date. Except as provided in this Plan, on the Confirmation Date, All-State shall be granted a discharge under 11 U.S.C. § 1141.

7.4.    <u>Funding of Plan.</u> This Plan shall be funded by the net income of All-State and the assets and non-exempt net income of Mr. Gibler.

7.5.    <u>Gibler Creditor Fund.</u>  On the Effective Date of the Joint Plan, Mr. Gibler will open a separate interest bearing bank account (the "Gibler Creditor Fund").  After payments to any Administrative Priority Claims, Secured Claims and/or Unsecured Priority Claims, Mr. Gibler will remit all net disposable income from all sources, including each paycheck from All-State, into the Gibler Creditor Fund.  Mr. Gibler shall maintain a separate bank account which shall be used to pay his ordinary and necessary expenses of his household (the "Gibler Operating Account").  The Gibler Creditor Fund will be maintained and used for making payments to creditors in Class 14 until the Plan is completed.

7.6.    <u>All-State Creditor Fund.</u> On the Effective Date of the Joint Plan, All-State will open a separate interest bearing bank account (the "All-State Creditor Fund").  All-State shall maintain a separate bank account which shall be used to pay the ordinary and necessary expenses of running the business (the "All-State Operating Account").  The All-State Creditor Fund will be maintained and used for making payments to creditors in Class 8 until the Plan is completed.

> a.    Within thirty days following the close of each quarter, All-State shall calculate its Net Income and deposit forty percent (40%) of its All-State Net Income into the All-State Creditor Fund for distribution to the Allowed Class 8 Claimants.

> b.    "<u>All-State Net Income</u>" shall mean All-State's net income calculated in accordance with Generally Accepted Accounting Principles ("GAAP"), plus depreciation, less payments to Allowed Classes of secured and priority creditors.  Net Income is generally understood as follows: *net revenue - cost of goods sold - administrative expenses - income taxes = net income.*  In this case, All-State shall also subtract the expenses of its payments under the Joint Plan to its administrative, secured and priority claims before calculating its net income.

7.7.    All-State shall deposit the remaining 60% of its All-State Net Income into a working capital account (the "Working Capital Account") within thirty days following the close of each quarter.  All-State shall use the monies in the Working Capital Account to meet its working capital needs such as replacement of furniture, fixtures, equipment, etc., as such items deteriorate or need to be replaced.  In addition, All-State shall maintain a minimum of $50,000.00 in the Working Capital Account during the life of the Joint Plan which will be used to pay any shortfall in any monthly payments to secured and/or priority creditors.  Should All-State require the use of such reserve for secured and/or priority creditors, All-State shall immediately replenish the reserve with the first available Net Income. All-State shall properly maintain the records of its Working Capital Account, including any disbursements out of such account for its capital needs, which shall be

available to be reviewed by any creditor in accordance with the Disclosure Statement and the Joint Plan.

7.8.    Within 60 days following the end of each calendar year after the effective date, All-State shall reconcile the All-State Net Income contributed to the All-State Creditor Fund for the past calendar year and, if determined, the amount of monies deposited to the All-State Creditor Fund are greater than or less than the aggregate of all quarterly installments paid for said calendar year, then All-State shall either: deposit into the All-State Creditor Fund 40% of any additional All-State Net Income as reconciled for distribution to Allowed Class 8 Claims the following quarter; or, receive a credit against future deposits to the All-State Creditor Fund for future quarters.

7.9.    Payments to Unsecured Creditors.  On the first anniversary of the Effective Date, the Debtors shall being making distributions to the Allowed Class 8 and 14 Creditors from the All-State Creditor Fund and the Gibler Creditor Fund, respectively.  Such amounts shall be mailed within thirty (30) days after the anniversary of the Effective Date and continue for five (5) years.  Should the funds paid from All-State Creditor Fund or the Gibler Creditor Fund the balance due to each Allowed Class 8 and 14 Creditor, respectively, prior to the end of five years, the Debtors' obligations to Allowed Class 8 and 14 Creditors shall be deemed satisfied.

7.10.    Quarterly Fees.  Prior to the entry of the final decree, the Debtors shall continue to remit quarterly fees and post-confirmation reports to the United States Trustee.  Payments continue until the Chapter 11 case is dismissed, converted or closed.  The quarterly fees shall be paid as they become due.  The Debtors anticipate filing a motion to administratively close Mr. Gibler's bankruptcy case once required payments under the Plan have been commenced.

7.11.    The Debtors' financial records shall be available for review by creditors upon reasonable notice to the Debtors and their counsel during normal business hours subject to execution of an appropriate confidentiality agreement.

7.12.    The Debtors may pursue any claims or recovery actions held by either Debtor, including but not limited to recovery under 11 U.S.C. §§ 544, 547, 548 and 549.  To the extent the Debtors recover any money on account of such claims, all funds after payment of litigation expenses, including attorney's fees, shall be deposited into the Gibler Creditor Fund or All-State Creditor Fund, depending upon which Debtor recovers such funds.  The Debtors may abandon any claim they have has against any third party if they determines that the claim is burdensome or of inconsequential value and benefit. The Debtors are authorized to employ counsel to represent them in the litigation or any cause of action or claims held by the Debtors.

7.13.    All funds held by the Reorganized Debtors for distribution under the Plan shall be held in accounts which are insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States.

7.14.    After the Effective Date, the Reorganized Debtors exercising their business judgment may sell, operate or abandon any of their assets.

7.15.    <u>Cancelling and Issuing New Stock:</u>  The treatment of the Reorganized Debtor's stock is dependent upon whether the Plan is confirmed as a Consensual Plan with the acceptance of each class of creditors or by Cramdown in the event of a rejecting class.

> 7.15.1  <u>Consensual Plan:</u> In the event that the Plan is confirmed as a Consensual Plan, with the acceptance of each class, Mr. Gibler will retain his stock and hold 100% of the outstanding issued shares of the Reorganized Debtor.

> 7.15.2  <u>Cramdown:</u>  In the event that the plan is confirmed by cramdown, without the acceptance of each class, the Class 23 interests shall be canceled and reissued as provided in Section 4.15 of the Plan.

> 7.15.3  As may be required, the Articles of Incorporation and ByLaws of All-State may be amended on or after the Effective Date to comply and conform to this Plan.

7.16.    <u>Unclaimed Distributions.</u>  For a period of one year following the date a payment is due under the Plan, the Reorganized Debtors shall retain in a reserve account for issuance of any unclaimed distributions for the benefit of the holders of allowed claims and/or administrative expenses which have failed to claim such distributions.  Following the one year period after such distributions are due, the holders of allowed claims or allowed administrative expenses theretofore entitled to such distributions held in such reserve account shall cease to be entitled thereto and thereupon such distributions shall become property of the Reorganized Debtors.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1    <u>Definitions and Rules of Construction.</u>  The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions in the Disclosure Statement.

8.2    <u>Severability.</u>  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.3    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.4     Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.5     Controlling Effect.  Unless a rule of law or procedure is supplied by federal law including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Colorado govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.6     Entire Agreement.  This Plan, constitutes the entire agreement among the parties hereto and there are no agreements, representations or warranties which are not set forth herein.  All prior negotiations, agreements and understandings are superseded hereby.

8.7     Definitions and Rules of Construction.  The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

a.      "Administrative Expense" shall mean any cost or expense of administration of Chapter 11 allowed under 11 U.S.C. § 503(b).

b.      "Allowed Claim" shall mean (a) an unsecured claim against the Debtor which is set forth in the Debtor's schedules other than an unsecured claim against the Debtors scheduled by the Debtors as unknown, disputed, contingent or unliquidated; (b) an unsecured claim against the Debtors which has been filed pursuant to 11 U.S.C. § 501, and with respect to which no objection to the allowance thereof has been interposed within the deadlines set forth in this Plan, or as to which any objection has been determined by Final Order; provided however, that interest accrued on or after June 23, 2017, shall not be a part of any Allowed Claim.  Allowed Claims may include, but are not limited to, claims that arise from the rejection of executory contracts.

c.      "All-State Creditor Fund" shall mean that creditor fund established by the Plan and defined in Section 7.6 of the Plan.

d.      "All-State Net Income" shall mean that net income as defined in Section 7.6 of the Plan as part of the establishment of the All-State Creditor Fund.

e.      "All-State Petition Date" shall mean June 23, 2017, the date that All-State commenced a voluntary petition under Chapter 11 of 11 U.S.C. §101, *et seq.*

f.      "Class" shall mean any class of creditors or interests described in Article II of the Plan.

g.      "Code" shall mean the Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

h.      "Confirmation" shall mean the entry by the Court of an order confirming the Plan in accordance with Chapter 11 of the Code.

i.      "Confirmation Date" shall mean the date on which the Plan is confirmed by the Bankruptcy Court.

-24-

j.     "Confirmation Order" shall mean a Final Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

k.     "Contested Claim" shall mean shall mean any Claim which has been scheduled by the Debtor as disputed, contingent, or unliquidated or any Claim as to which an objection to the allowance thereof has been or will be filed within the deadline for filing of such objections set forth in Article V of this Plan. Contested Claims shall be treated under the provisions of Article V of this Plan until allowance or disallowance of such claim has been determined by a Final Order. Contested claims include claims which the Debtor believe should be objected to in whole or in part. Contested claims further include any claims held by creditors against whom the Debtor believe actions may be brought under 11 U.S.C. §§ 544, 547, 548 or 549.

l.     "Disallowed Claim" shall mean any claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

m.     "Disputed Claim" shall mean any claim which has been scheduled by the Debtor as unknown, disputed, contingent or unliquidated, or any claim as to which an objection has been filed and allowance or disallowance of such claim has not been determined by a Final Order.

n.     "Effective Date" shall mean the first business day following thirty (30) days after the date the order confirming the Plan becomes a Final Order.

o.     "Final Order" shall mean an order or a judgment as to which the time to appeal or seek review or rehearing has expired. In the event that an appeal or petition for rehearing is filed, an order or judgment shall be final unless an Order enters granting a stay pending appeal or petition for rehearing.

p.     "Gibler Creditor Fund" shall mean that creditor fund established by the Plan and defined in Section 7.5 of the Plan.

q.     "Gibler Petition Date" shall mean January 26, 2018, the date that Mr. Gibler commenced a voluntary petition under Chapter 11 of 11 U.S.C. §101, *et seq.*

r.     "Income" shall mean all of the property of the Estate as defined by 11 U.S.C. §1115.

s.     "Post-petition" shall mean anytime on or subsequent to June 23, 2017 for All-State, or January 26, 2018 for Mr. Gibler.

t.     "Preference Recovery Funds." All net proceeds from the prosecution of any and all claims pursuant to 11 U.S.C. §§ 544, 547, 548, 549, and 550, in the event the Debtor pursues such claims or actions under the Bankruptcy Code, after payment of legal fees and expenses.

u.     "Pre-petition" shall mean anytime prior to June 23, 2017 for All-State, or January 26, 2018 for Mr. Gibler.

v.     "Pro Rata" shall mean with respect to any claimant, the percentage which the allowed Claim of a creditor bears to the sum of all Allowed Claims in the same class as such Allowed Claim.

w.     "Unimpaired" A class of claims or interests is "unimpaired" in accordance with 11 U.S.C. §1124 if the legal, equitable and/or contractual rights of the holders of such claims or interests are not altered under the Plan.

-25-

x.   "Unsecured Claims" shall mean the Allowed Claims against the Debtor which are unsecured and which are other than Allowed Priority Claims and Allowed Administrative Expenses, and shall include any Deficiency Claim(s) arising to the holder of an Allowed Secured Claim, pursuant to the provisions of 11 U.S.C. §506, after a hearing pursuant to the applicable Federal Rules of Bankruptcy Procedure or resulting from any agreement reached between the Claimant and the Debtor in which it was determined that the value of the collateral securing the claim was less than the Allowed Claim.

y.   "Unsecured Creditors" shall mean the holders of allowed Unsecured Claims against the Estate.

## ARTICLE IX
## DISCHARGE

9.1.   Discharge of All-State.  Pursuant to 11 U.S.C. § 1141(d)(1)(A), confirmation of the Joint Plan shall discharge only All-State from any debt that arose before the date of such confirmation and any debt of a kind specified in 11 U.S.C. §§ 502(g), 502(h), or 502(I), whether or not: (a) a proof of claim is filed or deemed filed; (b) such claim is allowed under 11 U.S.C. § 502; or, (c) the holder of such claim has accepted the plan.  Confirmation of the Plan also terminates all rights and interests of equity security holders and general partners provided for by the Plan.

9.2   Discharge of Mr. Gibler.  Confirmation of the Plan does not discharge Mr. Gibler for any debt provided for in the Plan until the Court grants him a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.  Mr. Gibler will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523 except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  Mr. Gibler anticipates filing a motion to administratively close his bankruptcy case once required payments under the Plan have been commenced.  Upon completion of the required Plan payments, Mr. Gibler will file a motion seeking to reopen the case for purposes on entry of the Final Decree and entry of his discharge.

9.3   Enforcement of Plan.  The Reorganized Debtors shall be entitled to seek injunctive relief from the Court, if necessary, to enforce any and all provisions of the Plan.

## ARTICLE X
## DEFAULT OF PLAN

10.1   In the event of any default by the Reorganized Debtors of any payment to any class of claimants arising under the terms of this Plan other than payment to IRS, the Reorganized Debtors shall have thirty (30) days within which to cure any default in payments due under this Plan after the date of issuance of written notice from any claim holder.

10.2    Written notice shall be provided to the Reorganized Debtors and to their counsel at the addresses set forth below, unless written notice of substitution of legal counsel is served upon the claim holder at least fifteen (15) days prior to the date notice is sent.

10.3    In the event that the Reorganized Debtors fail to cure any default in the requirements to make payment under the Plan, within thirty (30) days from the date that written notice is sent in compliance with paragraph 10.2, the entire amount of the obligations dealt with under the Plan shall be immediately due from the Reorganized Debtors.

10.4    These default provisions shall not apply to the IRS, Colorado Department of Revenue or to the Colorado Department of Labor and Employment.  Any default as to these creditors shall be governed by applicable non-bankruptcy law, except as otherwise provided for in the Plan.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

11.1    <u>Retention of Jurisdiction</u>. The Reorganized Debtors reserve the right to reopen the Chapter 11 Case after Confirmation and dismissal for the purposes set forth in this paragraph.  The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

(a)    To hear and determine any and all objections to the allowance of Claims or Interests.

(b)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan, to the extent such claim was incurred prior to the Effective Date.

(c)    To hear and determine any and all pending applications for the rejection or assumption, or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtors are a party, and to hear and determine any and all Claims arising therefrom.

(d)    To consider any modifications of the Plan, to remedy any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including the Confirmation Order.

(e)    To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan, including, but not limited to, any and all applications, adversary proceedings, claims objections and contested matters that may be pending on the Effective Date or become necessary after the Effective Date.

    (f)      To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors where the original claim or cause of action is in excess of $25,000.00.

    (g)      To issue orders in aid of execution of the Plan as contemplated by 11 U.S.C. § 1142.

    (h)      To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

11.2.   <u>Satisfaction of Claims</u>. The payment of Allowed Claims, Allowed Administrative Claims and Allowed Secured Claims shall be in exchange for all claims against the Debtors and shall constitute full settlement, release, discharge, and satisfaction of all such claims against the Debtors. Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.3.   <u>Pre-Existing Causes of Action</u>. Nothing herein contained shall prevent the Reorganized Debtor from taking any action as may be necessary to the enforcement of any cause of action which may exist on behalf of the Reorganized Debtors and which may not have been enforced or prosecuted by the Debtor prior to the Effective Date.

11.4.   <u>Headings</u>. The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

11.5.   <u>Notices</u>. All notices, request, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.  All communications will be deemed delivered when received at the following addresses:

    (a)      To All-State:
            107 Central Avenue
            Wiggins, CO 80654

    (b)      With a copy to:

            Kenneth J. Buechler, Esq.
            Buechler Law Office, LLC
            999 18th Street, Suite 1230-S
            Denver, Colorado 80202
            Tel: 720-381-0045 / Fax: 720-381-0382
            email: ken@KJBlawoffice.com

(c)    To Mr. Gibler:
       107 Central Avenue
       Wiggins, CO 80654

(d)    With a copy to:

       Jeff S. Brinen, Esq.
       Kutner Brinen, P.C.
       1660 Lincoln St.
       Suite 1850
       Denver, CO 80264
       Direct Line: (303) 832-2418
       Fax: (303) 832-1510
       Email: jsb@kutnerlaw.com

(d)    To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, or, if no Proof of Claim is filed, at the address set forth for the claimant in the Debtors' Schedules filed with the Bankruptcy Court.

11.6.    Successors and Assigns. The Plan will be binding upon the Reorganized Debtors, any creditor affected by the Plan and their heirs, successors, assigns and legal representatives.

11.7    **Substantial Consummation.** On the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

11.8    **Exemption from Transfer Taxes**. Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

11.9    **Exculpation of All-State, its officers and directors, and Injunction against claims against Debtors, their estate and their assets.**

*(a)*    *Definitions.*

(I)    "*Representatives*" means, with regard to any entity, its officers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals).

-29-

(ii)     "*Exculpated Parties*" means, collectively, the Debtors, the officers and directors of the Debtors that served in such capacity at any time from and after the Petition Date (in their capacity as such as well as in their individual capacities), and each of their respective Representatives (each of the foregoing in its individual capacity as such).

(b)     **Compromise and Settlement**

Should the Plan be confirmed by consent pursuant to 11 U.S.C. § 1129(a), pursuant to 11 U.S.C. § 363 and Fed.R.Bankr.P. 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and equity interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and equity interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the estate and holders of Claims and equity interests.

(c)     **Exculpation**

**Should the Plan be confirmed by consent pursuant to 11 U.S.C. § 1129(a), notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any entity for any and all claims and causes of action arising on or after the Petition Date and prior to or on the Effective Date relating in any way to the conduct of this Chapter 11 Case, including any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Case, including, without limitation, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case; provided, however, that the foregoing provisions of this Article shall have no effect on the liability of any Exculpated Party that results from any such act or omission that is determined in a Final Order to have (i) constituted gross negligence, willful misconduct, or fraud, (ii) been outside the scope of their respective duties in the Chapter 11 Case, or (iii) arose prior to the Petition Date.**

This Third Amended Joint Chapter 11 Plan of Reorganization is respectfully submitted this 25th day of April, 2019.

| | |
|---|---|
| ALL-STATE FIRE PROTECTION, INC.<br><br>*/s/ Raymond S. Gibler*<br><br>_____<br>By: Raymond S. Gibler, President<br>Dated: April 25, 2019 | */s/ Raymond s. Gibler*<br><br>_____<br>Raymond S. Gibler, individual debtor<br>Dated: April 25, 2019 |
| BUECHLER LAW OFFICE, LLC<br><br>*/s/ Kenneth J. Buechler*<br><br>_____<br>Kenneth J. Buechler, #30906<br>999 18th Street, Suite 1230-S<br>Denver, Colorado 80202<br>Tel: 720-381-0045<br> Fax: 720-381-0382<br>email: ken@KJBlawoffice.com<br>Attorneys for All-State Fire Protection, Inc. | KUTNER BRINEN, P.C.<br><br>*/s/ Jeffrey S. Brinen*<br><br>_____<br>Jeffrey S. Brinen, #20565<br>1660 Lincoln St.<br>Suite 1850<br>Denver, CO 80264<br>Direct Line: (303) 832-2418<br>Fax: (303) 832-1510<br>Email: jsb@kutnerlaw.com<br>Attorneys for Mr. Gibler |